**LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,**

**v.**

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**No. Civ.A. 98–10643–REK.**

United States District Court, D. Massachusetts.

June 17, 1999.

Mark M. Whitney, Warner & Stackpole, Boston, MA, James E. Harvey, Kevin D. McElaney, O'Malley and Harvey, Boston, MA, Ralph T. Lepore, III, Holland & Knight LLP, Boston, MA, for Liberty Mutual Insurance Company, plaintiff.

Alan L. Briggs, Squire, Sanders & Dempsey, Washington, DC, Andrew W. Cohen, Lee H. Copeland, Squire, Sanders & Dempsey L.L.P., Washington, D.C., George Walton Walker, III, Squire, Sanders & Dempsey, L.L.P., Washington, DC, Ruth Ann Lowery, James P. Wehner, Squire, Sanders & Dempsey L.L.P., Washington, D.C., for Metropolitan Life Insurance Company, defendant.

Mark M. Whitney, Warner & Stackpole, Boston, MA, James E. Harvey, Kevin D. McElaney, O'Malley and Harvey, Boston, MA, Ralph T. Lepore, III, Holland & Knight LLP, Boston, MA, for Liberty Mutual Insurance Company, counter-defendant.

Memorandum and Order

KEETON, District Judge.

### I. Pending Matters

Pending for decision are the following motions and related filings:

(1) Plaintiff Liberty Mutual Insurance Company's Motion for Summary Judgment (Docket No. 37, filed March 5, 1999);

(2) Defendant's Consented–To Motion for Leave of Court To File Legal Memorandum in Excess of Twenty Pages (Docket No. 43, filed April 6, 1999);

(3) Defendant's Consented–To Motion for Leave of Court To File Second Amended Counterclaim (Docket No. 47, filed April 6, 1999).

## II. Relationships Among This and Other Cases Pending In This Court and Elsewhere

### A. The Nature of This Case

This is an action for declaratory judgment, filed in this court on April 14, 1998 by Liberty Mutual Insurance Company (Liberty Mutual), seeking a declaration regarding obligations and outside bounds of obligations of Liberty Mutual to New England Mutual Life Insurance Company (NEML) and its successor, the named defendant in this case, Metropolitan Life Insurance Company (MetLife), into which NEML merged on August 30, 1996.

The subject matter of the controversy is the scope of liability insurance coverage and rights and obligations arising under that coverage.

The claims against NEML, or MetLife, or both, have been made or allegedly may be made by natural persons or entities who allegedly would have been entitled to ownership rights or other kinds of beneficial interests under life or disability insurance policies issued by NEML, had NEML not committed fraud, deceit, negligent misrepresentation, suppression, or nondisclosure of material facts on which the claimants relied to their detriment, or on which some other person or entity relied to the claimants' detriment.

### B. Other Entities in the Picture

At all relevant times in this lawsuit, a subsidiary of MetLife, New England Variable Life Insurance Company ("New England Variable") performed policyholder servicing and administrative responsibilities for policies issued by NEML. New England Variable continued as a separate entity and operated under this title during the entire period when it was in existence and Liberty Mutual coverages were in effect. At the time of the MetLife Merger, New England Variable was renamed NEL. *See* Wilson statement at 14, Ex. 5. NEL continues at the present time to be located at 501 Boylston Street, Boston, and continues to perform policyholder servicing and administrative responsibilities for policies issued by NEML.

### C. MDL Class Action Proceedings In This Court

Also pending in this court, before the undersigned judge, is an MDL proceeding captioned:

IN RE NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY SALES PRACTICES LITIGATION

MDL–1105 (REK)
D. Mass. C.A. 96–11534–REK
ALL CASES

The MDL proceeding in this court has complexities far beyond those ordinarily inherent in ordinary MDL proceedings; it is, as well, a class action proceeding. To some extent those complexities are described in this court's Memorandum and Order of Certification and Practice and Procedure Order No. 6, October 1, 1998, MDL 1105(REK), D.Mass. C.A. 96–11534–REK.

In that order the court certified a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure.

On October 30, 1998, defendant filed a Petition for Writ of Mandamus with the Court of Appeals for the First Circuit seeking to have the order certifying a class vacated. On March 3, 1999, the First Circuit issued an order denying the Petition

for Writ of Mandamus without prejudice, noting that "petitioner may, however, move in the district court for reconsideration of the class certification order." The parties were by that time engaged in discussions exploring possible settlement, and on April 26, 1999, filed a stipulation that "while settlement discussions continue" NEML "will refrain from filing any motion seeking reconsideration of the Court's class certification Order," and plaintiffs "will not raise any defense of laches or otherwise oppose any motion for reconsideration based upon the delay in its filing as a result of the ongoing settlement discussions." Stipulation Approved, Practice and Procedure Order No. 9, May 5, 1999, MDL 1105(REK), D.Mass. C.A. 96–11534–REK.

### D. Additional Proceedings Elsewhere

Additional proceedings, including class action proceedings, are pending in other courts. Following is a list of some but not necessarily all of those other proceedings, the complaints of which are included in Docket No. 41 as Exhibits 7A–7S:

*Kenneth A. McRaney, et al. v. New England Mutual Life Insurance Co.,* No. 4:95cv406–B–B (D.Miss);

*Brad Fuller, et al. v. New England Mutual Life Insurance Co., et al.,* No. CV–96–1387–G (Ala.Cir.Ct. Montgomery Cty.);

*Cecil A. Mock, et al. v. New England Mutual Life Insurance Co., et al.,* No. CV960439 (Ala.Cir.Ct. Jefferson Cty.);

*Thomas Michael Morgan v. Gus Clements, et al.,* No. CV–96–148 (Ala.Cir.Ct. Tallapoosa Cty.);

*Thomas D. McGough, IV v. New England Mutual Life Insurance Co., et al.,* No. CV–95–_____ (Ala.Cir.Ct. Bullock Cty.);

*Linda C. Lynn v. New England Mutual Life Insurance Co., et al.,* No. CV–94–2457 (Ala.Cir.Ct. Montgomery Cty.);

*Robert L. Dunn, et al. v. New England Mutual Life Insurance Co., et al.,* No.

CV–94–2456 (Ala.Cir.Ct. Montgomery Cty.);

*Thomas D. Hawkins, Jr. v. New England Mutual Life Insurance Co., et al.,* No. CV–95–1327 (Ala.Cir.Ct. Montgomery Cty.);

*Wayne Loudermilch, et al. v. New England Mutual Life Insurance Co., et al.,* No. CV–96–213 (Ala.Cir.Ct. Mobile Cty.);

*William B. Cooper III v. The New England Mutual Life Insurance Co., et al.,* No. CV–95–06948 (Ala.Cir.Ct. Jefferson Cty.);

*Grady F. Reaves v. New England Mutual Life Insurance Co., et al.,* No. CV–96–252 (Ala.Cir.Ct. Calhoun Cty.);

*Locke Bowden, et al. v. New England Mutual Life Insurance Co., et al.,* No. CV–94–2454 (Ala.Cir.Ct. Montgomery Cty.);

*Richard D. White v. New England Mutual Life Insurance Co., et al.,* No. CV–94–966 (Ala.Cir.Ct. Houston Cty.);

*Harold Irwin Scales, et al. v. New England Mutual Life Insurance Co., et al.,* No. CV–94–2455 (Ala.Cir.Ct. Montgomery Cty.);

*George Wayne Smoot v. New England Mutual Life Insurance Co., et al.,* No. CV–94–1867 (Ala.Cir.Ct. Barbour Cty.);

*Sarah K. Steiner, et al. v. New England Mutual Life Insurance Co.,* No. 95/125966 (N.Y.Sup.Ct. New York Cty.);

*Alto L. Jackson, Jr. v. New England Mutual Life Insurance Co., et al.,* No. CV–95–2690GR (Ala.Cir.Ct. Montgomery Cty.);

*John C. Hendrix, III v. New England Mutual Life Insurance Co., et al.,* No. CV–95–2691R (Ala.Cir.Ct. Montgomery Cty.); and

*Charles R. Pouncey v. New England Mutual Life Insurance Co., et al.,* No. CV–96–1109 (Ala.Cir.Ct. Montgomery Cty.).

On the whole, these lawsuits were filed against NEML between 1994 and 1996 by policyholders who alleged that NEML had

committed fraud, deceit, negligent misrepresentation, suppression, or nondisclosure of material facts on which they relied to their detriment, or on which some other person or entity relied to the claimants' detriment.

Typical allegations were that NEML represented to its customers, primarily through the use of computer-generated "illustrations," at the time of purchase from NEML, that the life insurance policies they purchased would generate returns sufficient to cover the insurance premiums after about ten years. *See* Exhibits 7a–7y to Docket No. 41. Then, generally from nine to eleven years after purchase, NEML advised them that in fact they owed additional premiums if they wanted to continue to be covered by the insurance policies.

## III. Factual Background As To Policies Containing Liability Insurance of All Kinds (Including Primary, Excess, and Reinsurance)

Liberty Mutual is, and was for all coverage periods provided in its contracts relevant to the litigation, a Massachusetts mutual insurance company with a principal place of business in Boston, Massachusetts, located across the street from the NEML principal office in Boston.

Liberty Mutual issued comprehensive general liability ("CGL") policies to NEML from April 5, 1986 until April 15, 1995 (Docket No. 41, Exhibits 8A to 8B, 8E to 8M). Liberty Mutual issued also umbrella excess liability ("UEL") policies covering the periods from October 5, 1986 to May 5, 1988 (Docket No. 41, Exhibits 8C and 8D).

## IV. Coverage Under Policy Provisions Properly Interpreted

### A. Interpretation Principles

■ Interpretation of an insurance contract is ordinarily to be decided by a court as questions of law are decided. *Cody v. Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 439 N.E.2d 234, 237 (1982). Ordinarily that interpretation should assign to words in common usage a meaning consistent with common usage. *Jacobs v. U.S. Fidelity and Guar. Co.*, 417 Mass. 75, 627 N.E.2d 463, 465 (1994). When ordinary usage of a word includes several distinct and different meanings, the court must look to context for the appropriate meaning.

### B. Issues Bearing on Coverage

#### (1) Introduction

The parties fundamentally disagree on what the various policies cover. The coverage shifted over the roughly ten-year period during which Liberty Mutual was issuing policies to NEML.

■ It is not surprising that the parties are divided on the issue of what the contracts cover, accusing each other of making misrepresentations to the court, because the contracts themselves are opaque and appear to be self-contradictory. For example, the first CGL policy that covered the period from April, 1985 to April, 1986 declares on its first page in Item 3:

> The insurance afforded is only with respect to such of the following Coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be stated herein, subject to all the terms of this policy having reference thereto.

Underneath that declaration, under the heading "Coverages," the policy lists "Bodily Injury Liability" and "Property Damage Liability," with a premium for each of those coverages. This provision explicitly limits the policy's coverage to bodily injury liability and property damage liability (as Liberty Mutual is contending). Later in the policy, however, through the use of endorsements, the policy is stated to cover personal injury liability (as NEML is contending it covers) and liability assumed under contract. The court is unable to determine as a matter of law at this time whether the policy should properly be read

**534**

to include or not to include personal injury coverage. Liberty Mutual, in moving for summary judgment, has the burden of establishing its contention as a matter of law; it has failed to satisfy this burden with respect to whether the early CGLs cover the underlying claims.

### ■ The Exclusions

■ The "Exclusion of Liability for Insurance Contracts," relied upon by Liberty Mutual, is not self-evident. It states,

Insurance afforded by this policy for liability assumed under contract does not apply to any insurance policy contract on which the named insured is the insurer.

This exclusion clearly manifests an intention that coverage arising from "liability assumed under contract" not include any insurance policies. To that extent, it is clear. Liability under contract, however, is not the only basis upon which Liberty Mutual might be liable. As explained above, the early CGL policies (covering 1985 to 1991) are not entirely clear that they do not cover personal injury, which includes damage to a person's feelings. Thus, the exclusion might not bar coverage for the underlying claims because many of the underlying policy-holders claim mental anguish.

■ Nor does the "Exclusion for Insurance and Related Operations" clearly bar coverage. This exclusion declares as follows:

**This policy does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Liability:**

**(a) resulting from or arising out of**

**(1) any obligation assumed by any Insured under,** or

(2) the failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise respecting

any contract or treaty of insurance, reinsurance, suretyship, annuity, endorsement or employee benefit plan, including applications, receipts or binders therefor:

. . .

**(c) arising out of the rendering of or failure to render professional services in**

**(1) advising, inspecting, reporting or making recommendations in the Insured's capacity as an insurance company, consultant, broker, agent or representative thereof, or**

**(2) effecting insurance . . .**

**(5) the conduct of an investment, loan or real estate department or operation.**

(emphasis added). In the context, the ordinary interpretation of the language of part (a) is that Liberty Mutual is not assuming responsibility for all of NEML's insurance policies. It says, "[t]his policy does not apply" to liabilities "resulting from" "any obligation *assumed* by" an insured under "any contract." That is a way of stating, among other things, that when an NEML life-insurance policy-holder dies and NEML denies coverage, Liberty Mutual is not obligated to pay the death benefit. This is part of the core of the ordinary meaning of the words used in part (a) of this "exclusion."

Liberty Mutual asks the court to read this language much more broadly, so that any liability NEML might face that is associated with any insurance contract in which NEML is the insurer would not be covered. Liberty Mutual argues that "the usual purpose of CGL policies such as these is to protect the insured (that is, NEML) from premises liability claims such as slip and falls." Docket No. 55, p. 4. That may be true in a general sense. Nonetheless, if Liberty Mutual wanted the coverage of the policies to be that limited, it should have used very different words in its policy form than those appearing in this "exclusion."

Read generously to Liberty Mutual, the exclusion might be interpreted to exclude coverage for claims *based upon violation*

*of contract.* I cannot, on a motion for summary judgment, interpret the exclusion to bar coverage even more broadly than that, so that any connection of NEML's liability with one of its insurance contracts in which it was the insurer, however tenuous that connection might be, would insulate Liberty Mutual from coverage for NEML's tort or other non-contractual liability. Many of the underlying claims are based in tort as well as contract, alleging that NEML defrauded the policyholders. On this basis, I cannot determine at the present time that the exclusion unequivocally bars coverage for all of the underlying claims.

■ With respect to part (c) of the passage quoted above, I simply cannot determine at this time what the scope of that exclusion is in relation to the claims made against NEML.

I do not find in the Liberty Mutual policies a definition of "professional services." I also do not find a definition of "advising, inspecting, reporting, or making recommendations."

One key question is whether this exclusion applies to the situation in which a person for whose conduct NEML is legally accountable is excluded, even though the essence of the claim against NEML is that that person acted negligently and not fraudulently. Another key question is whether the exclusion bars coverage for alleged company-wide fraud. These questions are not answered unambiguously. Summary judgment based upon this exclusion is not appropriate.

### (3) The Umbrella Policies

The UEL policies, providing coverage from 10/5/1986 to 4/5/1988, state that they cover personal injury, property damage, and advertising injury. They contain various definitions:

"advertising injury or damage" means personal injury (other than bodily injury) and injury to intangible property sustained by a person or organization arising out of causes of injury first published in connection with the named insured's advertising activities during the policy period as the result of libel, slander, defamation, piracy, infringement of copyrights, invasion of the right of privacy or any negligent act, error or omission in the use of advertising or merchandising ideas.

"bodily injury" includes sickness or disease and death resulting at any time therefrom.

"personal injury" means personal injury or bodily injury which occurs during the policy period sustained by a natural person, but excluding any such injury included within the definition of advertising injury or damage.

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured.

NEML asserts that these two policies covered the underlying claims because those claims were for either personal injury or advertising injury.

I cannot determine as a matter of law that the underlying claims do not fall within the definition of "advertising injury," which includes "any negligent act, error or omission in the use of advertising or merchandising ideas."

Furthermore, I cannot determine as a matter of law that the underlying claims do not fall under the rubric of "personal injury," which is not even defined in the UELs but is defined in other policies to include injury to people's feelings.

Summary judgment is not appropriate on the basis of the coverage provided for in the UELs.

### (4) The CGLs from 1991 to 1995

■ Liberty Mutual issued also CGL policies covering the period from April, 1991 to April, 1995. As with the earlier

CGL policies, Liberty Mutual fails to establish that it is entitled to summary judgment on the basis of these policies.

Liberty Mutual declares that, "coverage for mental anguish was dropped from the policy language after April 1991." Docket No. 39, p. 16. It bases this statement on the fact that the definition of personal injury before 1991 specifically stated that it included mental anguish. After 1991, the definition of personal injury was the same—("injury to the feelings or reputation of a natural person other than 'bodily injury' or 'property damage' ")—but did not specifically state that it included mental anguish. I am not persuaded that, as a matter of law, the dropping of the phrase "including mental anguish" means that mental anguish is not included in the definition of personal injury after 1991. The ordinary meaning of mental anguish is injury to a person's feelings. It is not unreasonable for one to read the policy as a whole as meaning that a claim for mental anguish is within the definition of personal injury after 1991. Summary judgment is not appropriate on this basis.

### V.

The reasons stated above for denying Liberty Mutual Insurance Company's Motion for Summary Judgment differ materially from the reasons argued by Metropolitan Life Insurance Company in its opposition filings (Docket Nos. 44–46, 49, all filed April 6, 1999, and 57–58, filed June 10, 1999). My ruling is not based on the grounds asserted by Metropolitan Life, and is not a determination as to admissibility at trial of the opinion evidence (exemplified by the proffered testimony of David J. Riese) filed in opposition to Liberty Mutual's motion for summary judgment.

### Interlocutory Order

For the foregoing reasons, it is ORDERED:

(1) Plaintiff Liberty Mutual Insurance Company's Motion for Summary Judgment (Docket No. 37) is DENIED.

(2) Defendant's Consented-to Motion for Leave of Court to File Memorandum in Excess of Twenty Pages (Docket No. 43) is ALLOWED.

(3) Defendant's Consented-to Motion for Leave of Court to File Second–Amended Counterclaim (Docket No. 47) is ALLOWED. This is not in any respect a ruling either on issues of jurisdiction and abstention or on the merits of any aspect of the counterclaim.

(4) The next Case Management Conference is scheduled for 3:00 p.m., December 17, 1999.